IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ARGIE A. PHILLIPS                                                    PLAINTIFF

        v.                        Civil No. 2:15-cv-2170-PKH-MEF

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                      DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

        Plaintiff, Argie Phillips, brings this action under 42 U.S.C. § 405(g), seeking judicial

review of a decision of the Commissioner of Social Security Administration (Commissioner)

denying his claim for a period of disability and disability insurance benefits ("DIB") under Title

II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A).   In this judicial

review, the court must determine whether there is substantial evidence in the administrative record

to support the Commissioner's decision.   *See* 42 U.S.C. § 405(g).

I.      **Procedural Background:**

        The Plaintiff filed his application for DIB on March 23, 2007, alleging an onset date of

October 7, 2006, due to arthritis, diabetes, high blood pressure, numbness and tingling in the

fingers, and back problems.   (Tr.136-143, 161, 169-170, 190, 209, 217)  His claims were denied

both initially and upon reconsideration.   An administrative hearing was then held, resulting in an

unfavorable decision on June 2, 2009.   (Tr. 34-89, 92-103, 415-472, 860-917)  The decision was

affirmed by this Court, but remanded by the United States Court of Appeals for the Eighth Circuit.

(Tr. 838-841)  The Eighth Circuit found that the ALJ erred at step four in the sequential process,

finding Plaintiff could return to his past relevant work ("PRW").   A supplemental hearing was held

on April 10, 2013, resulting in another unfavorable decision on May 24, 2013.   (Tr. 401-410, 473-

543, 802-810, 824-832, 918-988)

On October 1, 2014, this Court remanded the case for clarification of the time period covered by Velvet Medlock's RFC assessment, reconsideration of treating physician Dr. Joel Cheong's RFC assessment in light of Ms. Medlock's assessment, and recalculation of the Plaintiff's date last insured. The ALJ held a third supplemental hearing on March 9, 2015. Plaintiff was presented and represented by counsel.

At the time of the third administrative hearing, Plaintiff was a person of advanced age and possessed a general equivalency degree. (Tr. 102, 770) He had past relevant work ("PRW") as a router machine operator, laborer, and limo driver. (Tr. 103, 162, 179, 180-186, 199-205, 483-490, 514, 647-648, 770)

On March 9, 2015, the Administrative Law Judge ("ALJ") recalculated Plaintiff's date last insured to be June 30, 2011. (Tr. 763) After reviewing the evidence, he concluded that, although severe, Plaintiff's bilateral carpal tunnel syndrome and disorder of the back did not meet or equal any Appendix 1 listing. (Tr. 763) The ALJ then determined Plaintiff maintains the residual functional capacity ("RFC") to perform medium work, but cannot perform repetitive movement of the wrists. (Tr. 764) With the assistance of a vocational expert, the ALJ concluded Plaintiff could perform work as a dietary aide, janitor/church sexton, and dining room attendant. (Tr. 770-771)

Subsequently, Plaintiff filed this action. (ECF No. 1) This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. (ECF No. 11, 14)

## II.   <u>Applicable Law</u>:

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than

a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v.* Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

3

relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520(a)(4)(v).

## III.   <u>Discussion</u>:

Despite this case's lengthy history of remand, this Court remains concerned that the Commissioner's RFC determination lacks substantial support in the record. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545. A disability claimant has the burden of establishing his or her RFC. *Vossen,* 612 F. 3d at 1016. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller*, 784 F.3d at 479 (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

Under the social security regulations, the Commissioner will generally give a treating physician's opinion on the issue of the nature and severity of a claimant's impairments controlling

weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." 20 C.F.R. § 404.1527(c)(2); *see also Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014). Yet such weight is neither inherent nor automatic and does not "obviate the need to evaluate the record as whole." *Hacker v. Barnhart,* 459 F.3d 934, 937 (8th Cir. 2006); *Hogan v. Apfel,* 239 F.3d 958, 961 (8th Cir. 2001). The Commissioner "may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Anderson v. Astrue,* 696 F.3d 790, 793 (8th Cir.2012) (quoting *Wildman v. Astrue,* 596 F.3d 959, 964 (8th Cir.2010)); *accord Hacker,* 459 F.3d at 937 (declining to give controlling weight to treating physician's opinion because treatment notes were inconsistent with her assessment).

As noted above, this case was most recently remanded by this Court to allow the ALJ to re-contact Ms. Medlock-Graham (formerly Ms. Medlock) for clarification of the time period covered by her functional capacity evaluation and RFC assessment, as well as to reconsider Dr. Cheong's assessment in light of Ms. Medlock-Graham's assessment. The ALJ did obtain clarification from Ms. Medlock-Graham, as requested. However, his treatment of the assessments of Dr. Cheong and Ms. Medlock-Graham, with regard to the Plaintiff's carpal tunnel syndrome, still falls short.

After discussing Dr.Cheong's opinion, the ALJ gave it little weight, finding "it is not supported by his examinations of the claimant." (Tr. 768) Further, with regard to the limitations imposed by Plaintiff's carpal tunnel syndrome, the ALJ concluded that his condition "was treated with conservative measures, which are appropriate based on the mild to moderate findings revealed

by testing." (Tr. 768)  He then discusses Ms. Medlock-Graham's testing and assessments, also affording them little weight because they are "unsupported by her evaluation of the claimant and speculative." (Tr. 769)  And, again, he acknowledges that the objective medical evidence reveals mild to moderate carpal tunnel syndrome. (Tr. 769).  However, the ALJ concludes the Plaintiff can perform medium work, but cannot perform tasks requiring the repetitive movement of his bilateral wrists. (Tr. 764)  The decision does not, however, "discuss the degree to which Plaintiff can reach, handle, finger, or feel objects." *St. Clair v. Colvin*, 2013 WL 4400832, at *2 (W.D. MO., Aug. 14, 2013).  This is particularly concerning, given the Plaintiff's history of carpal tunnel syndrome dating back to at least 2005 at which time Dr. Juan Hughes prescribed carpal tunnel splints. (Tr. 255-256)  A consultative examination in August, 2007, with Dr. Stanley Reyenga revealed decreased grip strength. (Tr. 297-303)  Dr. Reyenga diagnosed "history compatible" with bilateral carpal tunnel. (Tr. 303)  The pain persisted in November, 2007, and Dr. Joel Cheong noted decreased sensation in the middle three fingers on his right hand. (Tr. 375-388)  Carpal tunnel splints were again ordered and mailed to his home.

In June, 2008, despite compliance with the splints, Plaintiff stated that the numbness seemed to have localized in the middle three fingers on his right hand. (Tr. 341-350)  Further, he reported numbness when gripping a steering wheel.  Accordingly, on June 24, 2008, Plaintiff was referred to Dr. Chris Vincente for a neurology consult. (Tr. 326-327, 335-339)  He complained of chronic numbness and tingling in both hands, the right greater than the left.  An examination revealed some decreased sensation to light touch and pinprick at the second and third digits of the right hand, as well as the third digit of the left hand.  There was also a positive Tinel's sign in both wrists and his deep tendon reflexes were 1/4 at the biceps, triceps, and patella.  Dr. Vicente diagnosed paresthesias of the hand bilaterally, possible medial nerve entrapment neuropathy at the

carpal tunnel, and possible neuropathy secondary to diabetes mellitus. He then ordered an EMG and nerve conduction studies of Plaintiff's upper arms. (Tr. 326-327) The studies revealed mild prolongation of distal latency in the right medial motor nerve, slowing of the conduction velocity in the right medial sensory nerve, mild prolongation of the distal latency in the left medial nerve, and less slowing of the conduction velocity in the left median sensory nerve. (Tr. 389) Therefore, Dr. Vicente diagnosed mild to moderate bilateral carpal tunnel syndrome, right greater than left.

On October 29, 2008, Plaintiff returned to Dr. Cheong for assistance in determining his RFC. (Tr. 390-398, 655-659) He continued to experience wrist pain, in spite of wearing the wrist splints. An examination revealed decreased sensation in the middle three fingers of the right hand with some improvement in the left hand. Although still awaiting the results of Plaintiff's nerve conduction studies, Dr. Cheong felt it reasonable to diagnose Plaintiff with carpal tunnel syndrome/neuropathy. He identified a treating relationship with the Plaintiff for at least the previous three years, the medical records available to him, a current medical exam lasting 30 minutes, and Plaintiff's subjective complaints as the bases for his assessment. And, he opined that Plaintiff suffered from neuropathy in both hands, worse in the right, secondary to carpal tunnel syndrome or diabetes with paresthesia and weakness producing significantly diminished grip and manual dexterity in fingering and handling small objects that had not been responsive to rest, analgesics, or wrist splints. Dr. Cheong then assessed the following limitations related to the Plaintiff's carpal tunnel syndrome:

- frequently lifting no more than 10 pounds
- occasionally lifting no more than 20 pounds
- rarely lifting over 20 pounds
- occasionally pushing/pulling, working in an extended position, working above shoulder level, working overhead, and reaching
- rarely grasping with the right hand
- occasionally grasping with the left hand

- rarely fingering/fine manipulating with the right hand
- occasionally fingering/fine manipulating with the left hand
- moderate limitations with regard to driving an automobile

In December, 2008, Plaintiff reported increased pain causing him to double his Naproxen dosage. (Tr. 677-685) Again, he indicated that his symptoms had generalized to the middle three fingers on his right hand. He did not; however, want to undergo carpal tunnel release surgery.[1] Accordingly, Dr. Cheong increased his Naproxen dosage. In February, 2011, Plaintiff complained of numbness in his hands and fingers when gripping a steering wheel. (Tr. 695-704) An examination revealed decreased sensation in the middle three fingers of the right hand with improvement in the left hand.

Although seven months after Plaintiff's date last insured, Dr. Cheong's examination on February 7, 2012, once again documented decreased sensation in the middle three fingers on Plaintiff's right hand. Although Plaintiff's carpal tunnel had been stable with symptoms primarily localized to the right hand, Dr. Cheong indicated that his carpal tunnel syndrome was "coming back," and he prescribed new braces.

On April 9, 2013, Velvet Medlock performed a functional capacity evaluation. Validity measures, such as changes of heart rate, blood pressure, and body mechanics as well as distracted movements, were consistent with his diagnosis and complaints of pain during the evaluation. (T. 676, 1095-1109). The results of the extensive testing indicated that Plaintiff could perform work

---

[1] We do note that a Plaintiff's refusal to undergo surgical intervention for carpal tunnel syndrome can be used to suggest that their impairment is not disabling and to discredit the Plaintiff's subjective complaints. *See Goodale v. Halter*, 257 F.3d 771, 773–74 (8th Cir. 2001) (holding as permissible the ALJ's regard of claimant's refusal to undergo carpal tunnel surgery as evidence that pain was "something [claimant] could live with"). However, the functional limitations resulting from the Plaintiff's carpal tunnel syndrome, as evidenced here by the medical evidence, must still be accounted for in the RFC. Otherwise, the RFC does not represent the work-related tasks the Plaintiff can actually perform.

at the sedentary level with changes from sitting to standing every 15 minutes and occasional lifting and carrying up to 10 pounds.  (T. 662- 664)

Ms. Medlock then completed an RFC assessment.  (Tr. 662-664, 1095-1109)  Relevant to Plaintiff's diagnosis of carpal tunnel syndrome, she assessed the following limitations:

- Frequently lift up to 5 pounds
- Occasionally lift 5 to10 pounds.
- Rarely lift 11-20 pounds and never more than 20
- Cannot push/pull, work in extended position work above shoulder level, work overhead, or reach
- Cannot use either hand for grasping, fingering, or fine manipulation
- Cannot handle vibrating tools

Following remand by this Court, Ms. Medlock-Graham completed a supplemental RFC assessment in January, 2015.  (Tr. 1088-1093)  At this point, she decreased his handling, fingering, and feeling restrictions to occasional, but continued the restrictions regarding pushing/pulling, vibrations, and operation of a motor vehicle.

On April 6, 2015, Ms. Medlock-Graham penned a letter to Judge Starr.  (Tr. 1110)  Based upon the records provided by Mr. Duty and the testing she conducted of the Plaintiff, she was of the opinion that Plaintiff's onset of disability was as early as 2007, possibly earlier, and had remained consistent since that time.

After reviewing the evidence, this Court finds remand is again necessary to allow the ALJ to reconsider the limitations imposed by Plaintiff's carpal tunnel syndrome.  The record makes clear that the Plaintiff has limitations related to grasping, fingering, handling, and manipulating objects with both hands, although his right hand does appear to be more limited than his left.  We note that repetitive tasks including typing, cutting, sewing, playing a musical instrument, overuse of small hand tools, and use of vibrating tools are also factors that can contribute to the development of carpal tunnel syndrome.  Thus, it also seems reasonable that a restriction regarding

these type activities be included in the assessment.  Accordingly, on remand, the ALJ is directed to incorporate these limitations into an RFC assessment and include them in a hypothetical question posed to a vocational expert to determine whether work that exists in significant numbers in the national economy remains available to an individual of Plaintiff's age, education, and work experience.

**IV.**     **Conclusion:**

    Based on the foregoing, we recommend reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 28th day of July, 2016.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE